Good morning, Your Honors. My name is David Avery, and I'm also with the Missoula Branch of the Federal Defenders of Montana. I think the Court appropriately designated this case for oral argument because Mr. Burgert has raised some complex and also some viable challenges, one, to his conviction for possessing a machine gun, and then secondly, for his overall sentence. If all his challenges are meritorious, that still leaves a conviction for being a felon in possession of a firearm. I just wanted to give a little context to that. I'd ultimately like to address the jurisdictional challenge to his conviction, that there are a couple of matters that have arisen that were not addressed in the briefs that have to do with respect to his sentencing. Those are two intervening developments, one of them being the Supreme Court's decision in Blakeley, as interpreted by Ameline, which, again, we sent 28-J letters on right after Blakeley and then right after Ameline. Unfortunately, I think our letters reference the reckless endangerment during flight enhancement that is that issue in our appeal, and neglect to mention that those decisions would also apply to a second enhancement that was possessing the firearm in connection with another felony offense. But just for the record, I'd like to say that if they apply, they apply to both. If they don't apply, if Ameline and Blakeley don't apply, then they don't apply to both. The second intervening development occurred within the specific legal landscape of this case, and that is that Mr. Burdett has been charged with and has pled guilty to a conspiracy to possess firearms, which completely subsumes, and I'm talking subsequent to the filing of the reply brief in this case, a conspiracy to possess firearms, and that conspiracy completely subsumes the conduct at issue in this case, which is to say that the gun and the reckless endangerment during flight are both, those are overt acts in this larger conspiracy. He's now pled guilty to that. And so even if Ameline is overruled, there's now a record in the second prosecution, and I filed a motion on Mr. Burdett's behalf to have the record supplemented with components of the new prosecution. That motion was filed fairly recently, has not been ruled upon by the panel's, by the motions panel. I think it has been ruled upon. Oh, I'm sorry, Your Honor. I hadn't. I think it's been granted. Okay. Thank you. And it was unopposed, so I appreciate the government's lack of opposition to that. And I don't know if Your Honors have read what was added to the record, but it's quite brief and I can read it to you. There's actually two components. One of them is the indictment itself, which alleges quite a number of overt acts. And the other one is an offer of proof that was made a part of the record before Mr. Burdett's change of plea. And it specifically addresses the conduct that we say shows that Mr. Burdett cannot be enhanced or his sentence can't be enhanced in this case because Ms. Tracy Brockway was a willing participant both in his illegal conduct and also in the flight. And that is, it says, on or about February 8, 2002, Defendants David Burdett and Tracy Brockway, having determined law enforcement were nearby, attempting to execute a warrant for Defendant David Burdett's arrest, fled from law enforcement in a vehicle. On that same day, during their flight from law enforcement, Defendants David Burdett and Tracy Brockway possessed two machine guns and a pistol. And one of the machine guns is the one that he's pled guilty to in this case. And so here we have, I mean, the government is in two of its pleadings saying that she was a participant in the flight and also a co-defendant. And even in the record before this supplementation, the record showed that guns were stored at her house and there was nothing in the record to suggest that he had somehow coerced her into the flight. And so our position is just that much stronger now. And if this Court will allow these parts of the record to be reviewed with respect to the present case, then I think it's pretty clear that this enhancement or the sentence needs to be sent back. And, of course, Mr. Burdett is going to be resentenced. And so that just makes it all the easier for that to happen, because he has not been sentenced yet for this conspiracy that he's recently pled guilty to. Unless there are some questions about the enhancement, I'd like to turn to the jurisdictional argument about the conviction. The government contends that this isn't a jurisdictional challenge at all, and it's more a denial of factual guilt. Government also says that Mr. Burdett doesn't say that the indictment failed to invoke the district court's jurisdiction by stating an offense, an actual offense. Regarding the first point, Mr. Burdett agrees that the record, I mean, it possibly could more strongly reflect whether the gun was made, how much craft went into making the machine gun. But the fact of the matter is that that's the problem with 922-0, is that it doesn't require any proof of that. That's one of the reasons it's unconstitutional as applied. It doesn't require any proof of what? It doesn't require proof of interstate, any kind of interstate travel with the gun. And so that if the- Well, in effect, you're saying there's no interstate commerce is not a jurisdictional requirement of the statute, right? Well, I mean, I think what this Court said in Stewart was that's one of the reasons that Mr. Stewart was not guilty of a federal offense, because, well, first of all, the Congress hadn't found that intrastate possession of a machine gun affects commerce. Second of all, if they had, the Stewart panel, I think, called into question whether there was reason to do that. But also it does discuss the fact that there is no, quote, unquote, jurisdictional hook. Well, what I'm really getting at is this is really not a jurisdictional job, is it? Well, I actually think it is. I mean, it's a belated- Well, I'm just, his argument is that after Stewart, and, you know, we wish that we had come up with Stewart's argument, but after Stewart, that no longer is a federal crime, interstate possession of a machine gun. And for that matter, I think actually I'm not sure that possessing a machine gun is a federal crime. Stewart doesn't say that, does he? Stewart says that intrastate possession of a machine gun is not a federal crime. Says what? That intrastate possession of a machine gun is not a federal crime. But I think that- Right. But, well, right. No, well- It doesn't apply. Stewart doesn't purport to apply to a gun that in fact has travel in interstate commerce, right? Which is the case here. No, no. These machine guns actually, well, the record, the record, admittedly, is not as clear as what was going on in Stewart. But the record here is that Mr. Burgert made the machine gun in his garage, and that's what the offer of proof was. Wait a minute now. He modified a gun to make it fire automatically, right? But the gun itself had traveled in interstate commerce. Well- A completed firearm. Actually, according to the debriefing with ATF, which obviously is not on the record, the gun, I believe, was made from parts from three different kinds of guns, which was a lot more similar to what's going on in Stewart, where it's not just the simple matter of removing one piece from a gun or adding one piece to the gun, but it's removal and addition, and there are several parts from different guns. And it's just that Stewart came out after his- Well, wait. As I understand it, Stewart was put- the Stewart gun was put together from items that were completely legal. And so were Mr. Burgert's. Yes. He, in fact, is remarkably similar. In Stewart's case, he was actually a guy who sold guns, parts and kits that could be then made into guns interstate, but he also made some of his own. Mr. Burgert didn't sell these kind of things, but he ordered them from North Carolina. And they would come, and then he would put together, you know, add pieces, take pieces off of his gun, which came from Massachusetts, but when it did, it was a legal gun. But he turned it into something that would have been illegal if 922-0 still applied. One thing is, is that Stewart does deal with an as-applied challenge. But I think the language in Stewart, or the result in Stewart, almost is that in the end, the 922-0 doesn't state a crime anymore. And I would just point the Court to a quotation from Professor Fallon at Harvard that's And I think now, I mean, if I had a machine gun, if I took one back to Montana from Seattle and I got charged under 922-0, I would immediately file a motion to dismiss because there's no jurisdictional obligation. Next is in the statute. Thank you, Your Honor. You have about a minute left for rebuttal, if you want to. I also will or excuse me, Josh Van de Wetteren again from the District of Montana. I also will not belabor the issue of the enhancements, particularly since Mr. Burgert is scheduled to be sentenced again and I believe has a strong argument that any new sentence he gets has to run concurrent or at the very least has an argument that the judge, the district court judge, could sentence him concurrently or partially concurrently on the new charges. So in terms of judicial economy, returning this case for resentencing is not difficult. However, I am going to argue that it is also not necessary, even if Ms. Brockway is a participant, willing participant in the flight. I believe Judge Malloy's ruling or his finding is, and I am quoting from Exhibiture Record, page 60, that the presence of some other person in the vehicle and with the reckless conduct involved in the driving and the events that occurred as set forth in the pre-sentence report, there was a substantial risk of death or serious bodily injury to another person. That would have been the person who was with him in the vehicle. I think those ands with respect to the foot chase through the woods, the reckless driving generally, I think show that even if Ms. Brockway does not count as a person who is appropriately endangered, I guess, reckless driving I think itself, a vehicle chase, which Mr. Burgert does not challenge as a factual basis, certainly is the sort of thing that endangers other people. And I believe you cannot say that Judge Malloy has clearly erred in making that decision. Before I move to the jurisdictional issue, I would also like to say. Wait a minute. But the reckless driving is in connection with having this same person in the car, right? And that's the person who would be put in danger by the reckless driving. There's nothing in the record that shows this was out in the rural area, right? It is. Well, Montana generally is rural, Your Honor, but what I'm suggesting is. Anybody else would have been in danger by the reckless driving except a passenger. There's no other person identified in the record. It's still the same argument, isn't it, that this person was a willing participant? That would be the same argument, Your Honor. But I guess what I'm saying is that Judge Malloy's finding that it was reckless driving implicitly suggests that there are other people who would have been in danger, other people on the road who you're flying past and, of course, aren't able to identify as the chasers going on. I want to say one other thing with respect to the probation restriction that Mr. Berger complains in his reply brief that or seems to suggest that the restriction on being with people who are involved in militias is too vague. And I would suggest that that is certainly sufficient information for Mr. Berger, especially someone who's been in militias, to know what kind of people he cannot spend time with. And we offer other kinds of restrictions on people's being able to be with other people in a variety of contexts. For instance, people who are convicted of dealing drugs are restricted from hanging around other drug dealers, itself a vague description. Well, but drug dealing is a crime. Right. And so, you know, it's common to, and I think proper to have a condition you can't associate with other criminals. Right. But, you know, being part of this movement is not necessarily illegal, is it? No, it's not necessarily illegal, Your Honor. But it's also easy, just as easy to identify someone who's associated with this kind of movement as it is to identify someone who's involved in drug dealing. Or, for instance, for someone who's a... Well, even though you can identify them, I mean, that's a vague mischarge. You know, the other contention is it's a restriction on his First Amendment rights. What's your response to that? My response, Your Honor, is that it's a very reasonable restriction on his First Amendment rights. It certainly is a restriction, but I think the cases are clear that probationers can expect some kinds of restrictions. And this is really a fairly narrowly tailored one. The court might have said something like you can't, for the safety of the public, you can't associate with people who are gun owners, which would be a far broader, certainly Montana would be a far broader cross-section of the population. Here it's a very narrowly drawn group of people that he can't be around. And, therefore, I suggest it's a reasonable restriction. With respect to the jurisdictional argument, we obviously, as we note in our briefs, suggest that Mr. Burgett first has waived that, any issue in that regard. And, of course, the way he's waived it is it's not really a jurisdictional issue. It's really an issue of the facts of the case. Well, it doesn't have to be jurisdictional. You know, Amwine says, which is not a jurisdiction, it can be raised even to his bond case. Assuming it can be raised, what distinguishes this case from Stewart? Well, the facts of the case distinguish it from Stewart, Your Honor. I believe in Stewart. The defendant there is actually not simply putting pieces together, or to quote the Stewart case, they required more than what Stewart's case required was more than a simple turn of a screwdriver or a hit of a hammer to become machine guns. And, of course, this Court of Stewart was worried about the increasing attenuation of the Commerce Clause requirement with the facts of the case. And so in our modern society, just about anything's traveled in commerce at some point. Where does that connection have to be? Stewart actually machines. He makes the parts in some respects himself. There's no record that Mr. Burgett does anything more than exactly the thing Stewart is trying to distinguish itself from, the simple turn of a screwdriver or hit of a hammer. There's a big difference between assembling an item into a machine gun by, I think, in fact, Stewart references putting together an IKEA chair. You get it in a box and you put all the parts together. The parts by themselves aren't a chair, but when you're done it is. It's the same thing with the machine gun. The big difference is you're not making the parts in the first place. That, I think, is the thing in Stewart that makes it an intrastate as opposed to an interstate nexus. And I would disagree with Mr. Avery's assertion of the broadness of Stewart. I don't think it's nearly that broad at all. And I think, again, it's easily limited to its facts because of Stewart's work in his own machine shop. By the way, I haven't followed. Do I have my petition for Stewart? Do you know? I don't know, Your Honor. Thank you. I should have saved myself a little more time. Regarding the enhancement, I would just point out on page 25 of our opening brief, there are several cases cited which deal with vehicle pursuits. The facts are much different than the record in this case. But even if Judge Malloy had found that there was reckless driving, he would have been in violation of Rule 32 of the Rules of Criminal Procedure in doing so because Mr. Virgert expressly disputed the fact that there had been reckless driving during the course of the flight. That is, the car pursuit. And there was never any proof put on that it was otherwise. And so even Amline recently has said that if there's allegations in the PSR that are disputed, then the government needs to prove them. That didn't happen in this case. And then regarding the condition of supervised release, I would just note that, I mean, the government, the prosecutor himself, referred to this kind of movement. I don't know what, I mean, that just shows how vague the militia movement is. I don't know what that really means. Different people take it to mean different things. Mr. Virgert's not going to know people from the militia. What happened at trial on this before the sentencing? Can you add? Was there an objection? Yes. You mean at sentencing regarding the condition of supervised release? Actually, no. The judge asked Mr. Virgert, do you think you can follow that? And Mr. Virgert took that to mean, is that something you want to follow, i.e., stay away from militia people? He said yes. He didn't then afterwards. If that's too vague, I don't understand. But he didn't say no. He did not say, no, that's too vague. And his lawyer didn't. Right.  I was there. If I can make one last point, is that as the machine guns in this case, there were parts from an FLA machine gun, there was parts from a half-century arms rifle, and then there were other parts. And Mr. Virgert did engage in welding, and it took several hours to do it. Thank you, Your Honor. Just one moment. On the reckless endangerment or the serious risk of death, the judge did say that he was speaking of the co-passenger. Oh, he specifically. Specifically said that. Was there an objection to that? Oh, yeah. First, actually, the PSR alleged that there was a reckless endangerment because of this foot flight through the woods with a gun. But Judge Moy said, well, hold on, I've already increased his sentence for that, or I'm going to, so I can't double count. But you know what? I think she was endangered during the car situation. So that had not been alleged in the PSR. And we objected on the grounds that there was no speeding and that whatever happened at the end of the chase was a mild sliding off the road. So that was all objected to. Okay. Thank you. The case is submitted for decision.
judges: Schroeder, Browning, Tashima